IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EPHRIAM GOLDSTEIN, et. al.,              *

     Plaintiffs,                              *

v.                                       *        Civil Action No. GLR-21-03124

KARL HINDLE,                             *

     Defendant.                               *

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Karl Hindle's Motion to Dismiss

(ECF No. 29). The Motion is ripe for disposition, and no hearing is necessary. See Local

Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will deny the Motion.

## I. BACKGROUND

### A. Factual Background[1]

In August of 2020, Defendant Allisa Hindle began an extramarital affair with

Plaintiff Ephriam "Dov" Goldstein. (Compl. ¶ 9, ECF No. 5). Their relationship lasted a

few weeks before Allisa Hindle reconciled with her husband, Defendant Karl Hindle. (Id.).

Goldstein alleges that after Karl Hindle found out about the affair, he was upset and started

threatening Goldstein. (Id. ¶ 10). This treatment continued until Goldstein obtained a peace

order against Karl Hindle on December 17, 2020. (Id.). A month after the peace order

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint
(ECF No. 5) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

expired in July of 2021,[2] the Frederick City Police Department informed Goldstein that he was under investigation on allegations of videotaping and circulating videos of his sexual encounters with Allisa Hindle without consent. (Id. ¶ 12). Goldstein avers that this allegation is false, and that the investigation was subsequently closed. (Id.).

On October 14, 2021, Goldstein became aware of a website (the "Website") with his name as the domain name, "www.dovgoldstein.com," containing the same videotaping allegations. (Id. ¶ 13). The Website also stated that Goldstein's friends, Plaintiffs Ronald Layman and Earl Morrissey, aided him in this conduct. (Id.). Most of the Website is written in the first-person perspective by Allisa Hindle, who accused Goldstein of being a "sexual predator," sending her photos of his genitalia, and "perjury and evidence tampering." (Website at 2, 24, 31, ECF No. 35-1). The Website also has a statement from Karl Hindle recounting the alleged perjury and evidence tampering. (Id. at 32). On November 4, 2021, three days after Goldstein received a new peace order, the Website was replaced with a new Website with the same domain name. (Compl. ¶ 15). The new Website prompted readers to file FBI complaints against Goldstein or reach out to Allisa Hindle at frederickhelp@gmail.com with information. (Id.). The Website also instructed readers to use the reference "HINDLE 7176588683 11032021" in making FBI complaints. (Id.). Plaintiffs allege that this reference number is a combination of the Hindles' last name, Karl Hindle's phone number, and a date. (Id. ¶ 16). Finally, the Website contained photos of

---

[2] The peace order's start date is listed as December 17, 2020, with an expiration date of June 17, 2020. The Court assumes that the correct expiration date was June 17, 2021.

Goldstein, as well as a floor plan of his home and the alleged location of cameras. (See generally Website).

**B.     Procedural History**

On November 4, 2021, Plaintiffs filed a Complaint against the Hindles in the Circuit Court for Frederick County. (ECF No. 5). In the Complaint, Plaintiffs make claims for defamation and false light invasion of privacy. (Compl. ¶¶ 17–64). On December 7, 2021, the Hindles removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal ¶¶ 4–9, ECF No. 1). Karl Hindle filed the instant Motion to Dismiss on February 13, 2023. (ECF No. 29). On February 28, 2023, Plaintiffs filed an Opposition (ECF No. 31) and a Notice of Dismissal of Allisa Hindle from the case without prejudice (ECF No. 32). Karl Hindle (hereinafter referred to as "Hindle") then filed a Reply on March 14, 2023, (ECF No. 24), which was followed by Plaintiffs' unopposed Motion to Supplement Record on August 16, 2023, (ECF No. 35).[3]

---

[3] In their Motion to Supplement Record, Plaintiffs note that the Website at issue, www.dovgoldstein.com, was taken down, and they seek to supplement the record by filing screenshots of the Website as it existed prior to August 2023. The Court will grant Plaintiffs' unopposed Motion and consider the Website screenshots in its analysis of the Motion to Dismiss. While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the documents showing the Website's content are clearly integral to the Complaint, which refers to the Website, and there is no dispute as to their authenticity. Accordingly, the Court will consider these documents.

## II.     DISCUSSION

### A.     Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v.

4

Rhodes, 416 U.S. 232, 236 (1974)). The court need not accept unsupported or conclusory

factual allegations devoid of any reference to actual events, United Black Firefighters v.

Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual

allegations, Iqbal, 556 U.S. at 678. However, Rule 12(b)(6) motions should only be granted

in very limited circumstances where it appears to a certainty that the plaintiff would not be

entitled to relief. Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

**B.      Analysis**[4]

**1.      Defamation**

Plaintiffs allege that Karl Hindle defamed them using Facebook and the Website.

(See generally Compl.). To state a defamation claim under Maryland law, Plaintiffs must

put forth a prima facie case by establishing:

> (1) that the defendant made a defamatory statement to a third
> person;
> (2) that the statement was false;
> (3) that the defendant was legally at fault in making the
> statement; and
> (4) that the plaintiff thereby suffered harm.

Offen v. Brenner, 935 A.2d 719, 723–24 (Md. 2007).

Hindle first argues that Plaintiffs have failed to establish the first element of the

defamation claim as to Goldstein because they have not shown, with specificity, that it was

---

[4] "A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits." Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 100 (4th Cir. 2013). Under Maryland's choice of law rules, courts must apply the substantive law of the state where the alleged tort occurred. First Union Nat. Bank v. N.Y. Life Ins. & Annuity Corp., 152 F.Supp.2d 850, 854 (D.Md. 2001) (quoting Philip Morris Inc. v. Angeletti, 752 A.2d 200, 231 (Md. 2000)). Therefore, the Court will apply Maryland law to Plaintiffs' claims.

Hindle who made any defamatory statements about Goldstein, or that he admitted to doing so. (Def.'s Mot. Dismiss ["Mot."] ¶¶ 3–4, 8–9, ECF No. 29). Hindle's argument is meritless. In the Complaint, Plaintiffs allege that Hindle "self-admittedly" wrote parts of the Website, and he also called Goldstein a "hidden camera perv." (Compl. ¶¶ 19, 37). His phone number was allegedly part of the reference number for the FBI complaints. (Id. ¶ 16). The screenshots of the Website contain a statement from Hindle saying that Goldstein had a "camera system" in his home and that he sent photos of his genitalia to Allisa Hindle. (Website at 32). These facts are sufficient for Goldstein to satisfy the first part of element one in stating a claim for defamation against Hindle. Whether or not it was Hindle or another person who created the Website and made these statements is a factual issue for discovery. At this stage in the litigation, the Court takes the Complaint's allegations as true. Albright, 510 U.S. at 268.

It is also clear that the alleged statements were defamatory toward each Plaintiff. A defamatory statement is defined as one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating, with that person." Doe v. Johns Hopkins Health Sys. Corp., 274 F.Supp.3d 355, 365 (D.Md. 2017) (quoting Gohari v. Darvish, 767 A.2d 321, 327 (Md. 2001)). A statement is defamation per se when "the words themselves impute the defamatory character, such that the plaintiff need not plead additional facts demonstrating their defamatory nature." Johns Hopkins Health Sys. Corp., 274 F.Supp.3d at 366 (internal citations and quotations omitted). Statements for which extrinsic facts are necessary to demonstrate the defamatory character of the words are defamatory per quod. Id. The

Restatement (Second) of Torts § 570 (1977) helps provide guidance regarding the types of

allegations that normally rise to the level of defamation per se, which include allegations

of:

> (a) a criminal offense, as stated in § 571, or
> (b) a loathsome disease, as stated in § 572, or
> (c) matter incompatible with his business, trade, profession, or
> office, as stated in § 573, or
> (d) serious sexual misconduct, as stated in § 574.

Words implying crimes are also per se defamation under Maryland law. Metromedia, Inc.

v. Hillman, 400 A.2d 1117, 1119 (Md. 1979) ("[I]f spoken words convey an implication

of crime, they are actionable in whatever mode their meaning may be expressed, that is,

whether by way of interrogation, insinuation, ironic praise or any other form of speech

understood by the hearers.").

Plaintiffs allege that the Website contained allegations that Goldstein is a "sexual

predator" who enjoys "secretly recording his sexual conquests." (Website at 2). There are

also testimonials on the Website stating Goldstein and Layman are "sick people" working

"together" to scam women, and Layman is the "ring leader" who installed the cameras to

watch Goldstein's sexual acts. (Id. at 36). In a Facebook post, Hindle said Morrissey was

a good friend of "hidden camera perv Dov Goldstein" and implied his involvement in sex

crimes. (Compl. ¶ 37). Lastly, Hindle's statement on the Website accuses the Plaintiffs of

perjury and evidence tampering. (Website at 32). These are serious accusations describing

both criminal offenses and serious sexual misconduct, and such statements would clearly

expose Plaintiffs to "public scorn, hatred, contempt or ridicule." See Johns Hopkins Health

Sys. Corp., 274 F.Supp.3d at 365 (quoting Gohari, 767 A.2d at 327). Consequently, Plaintiffs have successfully met the first element and shown defamation per se.

Regarding the second element, a statement is "false" if it is "not substantially correct." Id. at 366 (quoting Piscatelli v. Van Smith, 35 A.3d 1140, 1147 (Md. 2012)). A plaintiff must simply allege that the statements were false. Solomon Found. v. Christian Fin. Res., Inc., No. JRR-22-00993, 2023 WL 3058321, at *4 (D.Md. Apr. 24, 2023). Plaintiffs have done so in their Complaint, (Compl. ¶¶ 12, 21, 30, 38–40), and thus they have satisfied this element.

Third, Plaintiffs must allege Hindle is at fault for the defamatory statements. This requires a showing that the party making the statement acted negligently or with malice. Solomon Found., 2023 WL 3058321, at *6; see also Hawks v. Ruby, No. 2098, Sept. Term 2016, 2019 WL 4860760, at *8 (Md.Ct.Spec.App. Oct. 1, 2019). To satisfy the negligence requirement in cases involving private plaintiffs, plaintiffs must show the defendant failed to act as a reasonable person in making the false and defamatory statements. Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc., No. GJH-19-1312, 2021 WL 1215769, at *13 (D.Md. Mar. 31, 2021) (internal citations and quotations omitted). With actual malice, a plaintiff is required to show that the defendant made the defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not. Id. (internal citations and quotations omitted).

In the instant case, Hindle asserts that Plaintiffs failed to plead facts showing malice. (Mot. ¶ 13). Goldstein alleges that Hindle started a "campaign of abuse and threats" after discovering and becoming upset about the affair. (Compl. ¶ 10). Thereafter, Goldstein

8

became aware of the first of two websites containing the sexual allegations against all three Plaintiffs, which was promoted to colleagues and friends. (Id. ¶¶ 13, 23). Because Plaintiffs claim Hindle knew the statements were false, (id. ¶¶ 21, 30, 38), taken with the allegations that he was acting in a retaliatory manner, Plaintiffs have shown actual malice.

Fourth, Plaintiffs must have suffered harm. Hindle argues that Plaintiffs have not met this burden because the statements regarding damages lack specificity and factual support. (Mot. ¶¶ 11–13). But when statements are defamatory per se and made with actual malice, harm can be presumed. Samuels v. Tschechtelin, 763 A.2d 209, 245 (Md.Ct.Spec.App. 2000) ("[P]resumption of harm to reputation . . . arises from the publication of words actionable per se."); Hawks, 2019 WL 4860760 at *8 (explaining that a jury may award general damages for defamation per se even in the absence of proof of harm). The Court has already found that Plaintiffs have alleged defamation per se and malicious intent. Therefore, the final element is satisfied, and the Court will deny the Motion to Dismiss as to the defamation claims.

## 2. Invasion of Privacy and False Light

In addition to the defamation claims, Plaintiffs also claimed false light invasion of privacy. (Compl. ¶¶ 43–64). The elements of false light are: "(1) [the defendant gave the plaintiff] publicity in a false light before the public; (2) which a reasonable person would find highly offensive; and (3) that the actor had knowledge of or acted in reckless disregard of the publicized matter placing plaintiff in a false light." Finley Alexander Wealth Mgmt., 2021 WL 1215769, at *15 (see also Brown v. Bd. of Educ. of Prince George's Cnty., No. DLB-20-2632, 2022 WL 888424, at *10 (D.Md. Mar. 25, 2022)). False light invasion of

privacy claims "may not stand unless the claim also meets the standards of defamation." Piscatelli v. Smith, 12 A.3d 164, 173 (Md.Ct.Spec.App. 2011). However, unlike defamation, which solely requires publication and can be satisfied upon communication to one person, false light requires that the disclosure be public. Brown, 2022 WL 888424, at *10 (quoting S. Volkswagen, Inc. v. Centrix Fin., LLC, 357 F.Supp.2d 837, 845 (D.Md. 2005)). "The offending statements [must] have been communicated to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Finley Alexander Wealth Mgmt., 2021 WL 1215769, at *15.

Here, Hindle made his statements through the Website, which was open to the public at large and through public Facebook posts. The Website's self-proclaimed purpose was to get the attention of anyone who had knowledge of the Plaintiffs' alleged acts or those who engaged in sexual activities with Goldstein at his house. (See generally Website). Additionally, as explained above, Plaintiffs allege that the Website was circulated to friends and colleagues. (Compl. ¶ 23). Second, a reasonable person would find the Website's claims to be shocking or highly offensive. Finally, Plaintiffs have already alleged that Hindle had knowledge of the statements' falsity or acted in reckless disregard thereof. Accordingly, the Court finds the Plaintiffs have also stated claims for false light invasion of privacy.

### III.   CONCLUSION

For the foregoing reasons, the Court will deny the Motion to Dismiss. (ECF No. 29). Hindle will answer the Complaint in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 7th day of February, 2024.

_____/s/_____

George L. Russell, III
United States District Judge
