## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EPHRIAM (DOV) GOLDSTEIN,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Action No. CJC-21-3124** |
| **KARL HINDLE,** | * | |
| **Defendant.** | * | |

## MEMORANDUM OPINION

This matter is before the Court on two motions. The first is a Motion for Summary Judgment and Motion to Dismiss Defendant's Counterclaims with Prejudice filed by Plaintiffs Ephriam (Dov) Goldstein, Ronald Layman, and Earl Morrissey (the "Motion"). ECF No. 141. The second is a Motion for Summary Judgment filed by Defendant Karl Hindle (the "Cross-Motion"). ECF No. 143. The parties have filed responses to the motions. ECF No. 151 (Defendant's response to Plaintiffs' Motion); ECF No. 149 (Plaintiffs' response to Defendant's Cross-Motion). The motions are ripe for review, and no hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons discussed below, the Court grants in part and denies in part Plaintiffs' Motion and grants in part and denies in part Defendant's Cross-Motion. The result is that each party's claims fail.

## BACKGROUND

On November 4, 2021, Plaintiffs sued Defendant for defamation and false light invasion of privacy in the Circuit Court for Frederick County, Maryland. ECF No. 5. Plaintiffs allege that Defendant made two defamatory statements against Plaintiffs after learning that Mr. Goldstein

had an extramarital affair with Defendant's former spouse, Alissa Hindle.[1] ECF No. 5 ¶¶ 9, 13, 28. First, Defendant allegedly published a website (the "Defamatory Website") that contained statements accusing Plaintiffs of secretly recording the intimate encounters between Mr. Goldstein and Ms. Hindle and sharing the recording with others. ECF No. 5 ¶ 13. Second, Defendant allegedly made a Facebook post broadcasting the statements made on the Defamatory Website. ECF No. 5 ¶ 28.

On December 7, 2021, Defendant removed the case to this Court. ECF No. 7. On March 22, 2024, Defendant filed counterclaims against Plaintiffs for tortious interference. ECF No. 40-1. Defendant alleges that Plaintiffs created and uploaded YouTube videos disparaging Defendant, and that Plaintiffs created fake Facebook profiles impersonating Defendant and his business, Wellspring Digital, to damage his and Wellspring Digital's reputations. ECF No. 40 ¶¶ 82–221.

On July 28, 2025, Plaintiffs filed their Motion. ECF No. 141. Defendant filed a response on August 26. ECF No. 151. On July 29, 2025, Defendant filed his Cross-Motion. ECF No. 143. Plaintiffs filed a response on August 7. ECF No. 149.

## LEGAL STANDARD

A movant is entitled to summary judgment if they demonstrate, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). In considering the motion, the Court views the

---

[1] Ms. Hindle was also named as a defendant in this action but is no longer a party. After the case was removed to this Court, Plaintiffs voluntarily dismissed their claims against Ms. Hindle. ECF No. 32. Ms. Hindle reentered the case after the filing of Defendant's crossclaim, but the Court later dismissed the crossclaim.  ECF Nos. 40-1, 56.

facts and draws any inferences in the light most favorable to the nonmoving party. *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). "In other words, summary judgment is appropriate when the evidence 'is so one-sided that one party must prevail as a matter of law.'" *Id.* at 959 (citation omitted).

Once the moving properly supports their motion for summary judgment, the burden shifts to the nonmovant to identify evidence showing that there is a "genuine" dispute of "material" fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A dispute is material if the dispute involves "facts that might affect the outcome of the suit under the governing law." *Id.* Thus, to demonstrate a genuine dispute of material fact, the nonmoving party must present sufficient evidence for a reasonable jury to rule in their favor on each essential element of their claim. *See id.*

A nonmovant fails to demonstrate a genuine dispute of material fact in two pertinent circumstances. First, "[t]he nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Wheelabrator Baltimore, L.P. v. Mayor of Baltimore*, 449 F. Supp. 3d 549, 558-59 (D. Md. 2020) (quoting *Othentec Ltd. v. Phelan*, 526 F.3d 135, 141 (4th Cir. 2008)). Second, the nonmovant cannot create a genuine dispute of material fact if they "fail[] to make a showing sufficient to establish the existence of an element essential to [their] case …. since a complete failure of proof concerning an essential element … necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In these two circumstances, the court must grant summary judgment to abide by its affirmative obligation to prevent factually unsupported claims from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

When, as here, a court considers cross-motions for summary judgment, it must "review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). The court "resolve[s] all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party to that motion. *Id.* (citation omitted).

Each party here proceeds pro se. "Pro se litigants are accorded some generosity in construing their pleadings and filings. … Yet this does not require the [C]ourt to ignore clear defects …." *Jefferies v. UNC Reg'l Physicians Pediatrics*, 392 F. Supp. 3d 620, 625 (M.D.N.C. 2019) (citations omitted).[2] As relevant here, the Court cannot ignore when pro se litigants fail to abide by "the Federal Rules of Civil Procedure, especially as they relate to the fundamental requirement of presenting admissible evidence to support claims" on summary judgment. *Id.*

## DISCUSSION

In Plaintiffs' Motion, they argue that they are entitled to summary judgment on their own claims (defamation and false light invasion of privacy) and Defendant's counterclaims (tortious interference). Likewise, Defendant argues in his Cross-Motion that he is entitled to summary judgment on his counterclaims and Plaintiffs' claims. Stated differently, both sides argue they should prevail on their affirmative case and that the adverse party cannot prove their claims.

---

[2] Defendant argues that the Court should discount or reject Plaintiffs' Motion because it does not include a title, which is required by Federal Rules of Civil Procedure 10(a) and 7(b)(2). ECF No. 151 at 1–2. Defendant's argument is misplaced, however. Although Plaintiffs do not include the title of their Motion on the first page, the title is stated at the top of the second page. ECF No. 141 at 2. Accordingly, Defendant had adequate notice of the basis for the Motion, and he was not otherwise prejudiced by the title appearing on the second page. Thus, the Court rejects Defendant's argument and reviews Plaintiffs' Motion on its merits.

The Court begins its analysis by first examining Plaintiffs' claims and supporting evidence to determine whether the undisputed material facts establish that Plaintiffs are entitled to judgment as a matter of law. The Court will then perform the same analysis for Defendant's counterclaims.

## I.        Plaintiffs' Claims Do Not Survive Summary Judgment.

Plaintiffs argue that the Court should grant summary judgment in their favor because there is no dispute that they can prove their claims for defamation and false light invasion of privacy. ECF No. 141 at 3-4. The Court disagrees. The Court first reviews whether it can consider certain evidence pertinent to Plaintiffs' claims before turning to the merits of the claims.

### A.        Plaintiffs' evidence is inadmissible.

Plaintiffs have attached to their motion for summary judgment exhibits that allegedly support undisputed facts material to their claims, ECF No. 141 at 2-3, but many of these exhibits cannot be considered on summary judgment. A party may object, or a court may consider sua sponte, that "the material cited to support or dispute a fact [on summary judgment] cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(3); *see Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) ("It is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" (citation omitted)); *Kovalchik v. City of New York*, No. 09-CV-4546 RA, 2014 WL 4652478, at *6 n.7 (S.D.N.Y. Sept. 18, 2014) ("Insofar as 'the purpose of summary judgment is to prevent trials ... because of an absence of material issues of fact' ... it would seem inappropriate to permit the case to proceed where the only evidence supporting Plaintiff's theory is plainly inadmissible." (citation omitted)); *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (holding district court may find hearsay evidence inadmissible on summary judgment

*sua sponte*); *Harris v. AC & S, Inc.*, 915 F. Supp. 1420 (S.D. Ind. 1995) ("[T]his Court will *sua sponte* disregard affidavit testimony where it proves inconsistent with or otherwise contradicts deposition testimony."), *aff'd, Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429 (7th Cir. 1996).

In determining the admissibility of the evidence, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to the 2010 amendment; *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538–39 (4th Cir. 2015). Thus, on summary judgment, a proponent must do one of two things for a court to consider the proponent's evidence: (1) "show that the material is admissible as presented" or (2) "explain the admissible form that is anticipated." *Dipnarine v. Champion Opco, LLC*, Civil Action No. BAH-24-01758, 2025 WL 896333, at *6 (D. Md. Mar. 24, 2025) (citation omitted). As discussed below, Plaintiffs have failed to satisfy either option.

### 1.     Plaintiffs have failed to present their evidence in admissible form.

Plaintiffs did not present their evidence in an admissible form. Plaintiffs have presented printouts from websites, printouts from email and social media, and affidavits to support their claims on summary judgment. ECF No. 141 at 3. The Court reviews each in turn.

### i.     Website Printouts

Plaintiffs' evidence of printouts of websites is not presented in an admissible form. Evidence must be authentic to be admissible. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that … unauthenticated documents cannot be considered on a motion for summary judgment."); *AMA Sys., LLC v. 3B Tech, Inc.*, Civil Action No. JRR-21-1472, 2024 WL 4122113, at *2 (D. Md. Sept. 8, 2024). Evidence is authentic if the proponent "produce[s]

6

evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

A party intending to prove that a printout of a website or social media post was authored by a particular person, as here, must authenticate the printout in two separate ways. *First*, the printout must be authenticated "as accurately reflecting the content and image of a specific webpage." 2 Robert P. Mosteller et al., McCormick on Evid. § 227 (9th ed. 2025); *see also, e.g.*, *Firehouse Rest. Grp., Inc. v. Scurmont LLC*, No. 4:09-CV-00618-RBH, 2011 WL 3555704, at *4–5 (D.S.C. Aug. 11, 2011). A party can authenticate a printout under this first step if the printout has a URL and a date, if the party provides an affidavit attesting to the accuracy of the printout, or a combination of the two. *See, e.g.*, *Firehouse*, 2011 WL 3555704, at *5 (using URL and date); *In re Carrsow-Franklin*, 456 B.R. 753, 756-57 (Bankr. D.S.C. 2011) (excluding printout for failure to provide testimony or affidavit); *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015) (same).

*Second*, in cases in which authorship is essential to the claims at issue, the printout must be authenticated "as having been posted by" the author in question; otherwise, the printout would be irrelevant and thus inadmissible. *See* Mosteller et al., *supra*, at § 227*; see also, e.g.*, *United States v. Recio*, 884 F.3d 230, 236-37 (4th Cir. 2018); *McReynolds v. Lowe's Companies, Inc.*, No. CV08-335-S-EJL, 2008 WL 5234047, at *7 (D. Idaho Dec. 12, 2008). Courts typically determine that business records from the website or affidavits attesting to the authorship of the website, along with distinctive features in the printout that tie the website to the alleged author, are necessary to authenticate authorship. *See, e.g.*, *Recio*, 884 F.3d at 237 (holding Facebook post was authenticated as authored by defendant in part because government presented certification of records custodian and page contained username, photos, and emails tied to defendant);

*McReynolds*, 2008 WL 5234047, at *7 (finding testimony of person with knowledge required for authentication of printouts of Lowe's' website and that affidavit failed to authenticate the printouts as "statements of Lowe's.").

Central to Plaintiffs' defamation and false light claims is the allegation that Defendant authored the statements made on the Defamatory Website, and Plaintiffs present a series of website and social media printouts to substantiate that allegation. These printouts include the following:

- A printout purportedly showing that the Defamatory Website was created using a server with the name "SAILFISHHOST.COM" (the "Server Printout"). ECF No. 141-6.

- A printout purportedly showing the website of Defendant's company, Wellspring Digital. The website states that SailFish Systems is the website hosting service that Wellspring Digital provides to customers (the "Wellspring Digital Printout"). ECF No. 141-7

- A printout allegedly showing Defendant's LinkedIn profile, which states that he is co-founder of the SailFish website hosting service (the "LinkedIn Printout"). ECF No. 141-8.

- Printouts of the Defamatory Website. ECF No. 35-1.[3]

The Court addresses the admissibility of these four printouts below.

Each printout fails to satisfy the first step of authentication—that the printout accurately reflects the content of the webpage. The LinkedIn Printout does not include either the URL or the date on which the printout was created. ECF No. 141-8. The printout of the Defamatory Website contains a date but does not include the URL. ECF No. 35-1 at 19. While the Wellspring Digital Printout and Server Printout include the URLs of each website, they do not include the date on which the printouts were created. ECF Nos. 141-6, -7. Most significantly, the Plaintiffs have

---

[3] The Court considers the printouts of the website that were introduced earlier in the litigation at ECF No. 35-1 because the Court cannot effectively evaluate the off-center, cropped printouts of the website that were attached to the motion for summary judgment at ECF No. 141-5. *See* Fed. R. Civ. P. 56(c)(3) (permitting court to consider "other materials in the record" on summary judgment).

failed to provide an affidavit attesting to the accuracy of these printouts or the process by which the Plaintiffs created them. As a result, these printouts have not been authenticated on summary judgment.

In addition, the printout of the Defamatory Website cannot be authenticated under the second step because the Plaintiffs fail to present evidence that Defendant authored the Defamatory Website, either through a records custodian of the website, an affidavit attesting to authorship, or by some other means.

Finally, the Server Printout cannot be authenticated for an additional reason. Courts have repeatedly held that, to authenticate a printout from a website that retrieves data from other websites, a witness must testify to how the retrieval works and to the reliability of the retrieval process. *See United States v. Bansal*, 663 F.3d 634, 667-68 (3d Cir. 2011) (holding screenshots of website, retrieved from the Wayback Machine, were properly authenticated because witness testified to how the Wayback Machine works and to its reliability); *United States v. Gasperini*, 894 F.3d 482, 489-90 (2d Cir. 2018) (same); *United States v. Bondars*, No. 1:16-CR-228, 2018 WL 9755074, at *2 (E.D. Va. Aug. 20, 2018) (admitting screenshots retrieved from the Wayback Machine because they were authenticated by a certificate attesting to its accuracy). The Server Printout purports to show the website godaddy.com, which displays that the Defamatory Website is run by a server from the SailFish website hosting service, but the Plaintiffs fail to provide an affidavit from an employee at godaddy.com attesting to how the website retrieves server information from other sites or to the reliability of that information. Without such an affidavit, the Server Printout cannot be authenticated.

Because the Plaintiffs have not authenticated these four printouts, they have failed to present them in an admissible form on summary judgment.

### ii. Email and Facebook Printouts

Plaintiffs have failed to present in admissible form printouts of emails and Facebook posts allegedly made by Defendant. ECF No. 141-9. Like the four printouts discussed above, these printouts have not been authenticated because they are not supported by affidavits, records certifications from Facebook, or other evidence demonstrating that the printouts are what the Plaintiffs say they are. *See supra* Section I.A.1.i. Absent authentication, Plaintiffs have not presented the emails and Facebook posts in admissible form.

### iii. Affidavits

Finally, Plaintiffs have not presented several affidavits in admissible form. ECF No. 141-18. "An affidavit … used to support or oppose a motion [for summary judgment] must … set out facts that would be admissible in evidence…." Fed. R. Civ. P. 56(c)(4). An affidavit is not admissible in evidence and cannot be considered on summary judgment if it is unsigned and undated. *See Cole v. Wal-Mart Stores, Inc.*, No. 7:16-CV-00419, 2017 WL 5162822, at *2 n.1 (W.D. Va. Nov. 7, 2017) ("Plainly, an unexecuted affidavit lacks sufficient evidentiary foundation to be considered [on summary judgment].") *aff'd*, 723 F. App'x 220 (4th Cir. 2018); *see also Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 244 (D. Md. 2012) (disregarding affidavit in part because it was "undated and improperly signed"). Here, each of the three Plaintiffs provides an affidavit in their name. Each of the three affidavits, however, is unsigned and undated. Accordingly, these affidavits are not presented in an admissible form.

All told, the printouts of websites, printouts of emails and Facebook posts, and affidavits have not been presented in an admissible form.

### 2. Plaintiffs have not explained how their evidence could be admitted at trial.

In addition to failing to present their evidence in admissible form on summary judgment, Plaintiffs have also failed to explain how their evidence would be admissible at trial. This explanatory requirement "is usually not a heavy burden; the proponent need only 'show that it will be possible'" to admit the evidence at trial. *Johnson v. Helion Techs., Inc.*, Civil Action No. DKC-18-3276, 2021 WL 4750182, at *3 (D. Md. Oct. 12, 2021) (quoting *Humphreys*, 790 F.3d at 538–39). "[T]he required depth of explanation varies" based on the "items of evidence" considered in the case, "[b]ut it always requires *some* showing." *Id.* (emphasis added). Given that federal courts, including this District, have found that "printouts of third-party websites are inherently non-trustworthy without authentication," the parties here must present a stronger showing to assure the Court that their online items of evidence can be admitted at trial. *M-Edge Accessories LLC v. Amazon.com Inc.*, Civil Action No. MJG-11-3332, 2015 WL 403164, at *7, *7 n.9 (D. Md. Jan. 29, 2015) (listing cases); *see also Osunde v. Lewis*, 281 F.R.D. 250, 256 n.6 (D. Md. 2012) ("Some courts have expressed significant skepticism at the reliability of information obtained from the internet.").

Here, Plaintiffs have not explained—in any way—how their website, email, or Facebook printouts could be presented in an admissible form at trial. They have not identified a witness who would testify at trial to authenticate the evidence, nor have they identified any supplemental documents they would present at trial to authenticate the evidence. And they have not alleged that their evidence is self-authenticating. Accordingly, Plaintiffs have failed to make *any* showing that their online evidence could be presented in an admissible form at trial.

Plaintiffs have also not explained how they will admit the statements contained in their unsigned, undated affidavits, either through direct testimony or otherwise. While, presumably,

the Plaintiffs will testify as to the substance of their statements, the Court is not required to consider evidence on summary judgment merely because, as here, "it is easy to imagine how [Plaintiffs] could" present the evidence at trial. *Johnson*, 2021 WL 4750182, at *3. Plaintiffs must offer *some* explanation as to how they will present the statements in their affidavits; they have failed to meet even that low burden.

The website printouts, the email and Facebook printouts, and the affidavits in Plaintiffs' names are not admissible in evidence as presented on summary judgment, and Plaintiffs have not explained how the evidence could be admitted at trial. As a result, the Court does not consider them in deciding the merits of Plaintiffs' Motion.

### B.    There is no genuine dispute of material fact as to Plaintiffs' defamation and false light claims, and Defendant is entitled to judgment as a matter of law.

Defendant argues that Plaintiffs have failed to establish a genuine dispute as to their claims for defamation and false light invasion of privacy, and he further argues that he is entitled to judgment on their claims. ECF No. 143-1 at 7–8.  "An allegation of false light must meet the same legal standards as an allegation of defamation." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). Because the Court finds that Plaintiffs have failed to prove Defendant defamed them, Plaintiffs' false light claims also fail and they need not be analyzed. *See id.* at 306 (holding that defendant did not defame plaintiff and that, as a result, analyzing plaintiff's false light claim would be "superfluous"); *Ross v. Cecil Cnty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 624 (D. Md. 2012) ("A false light claim 'may not stand unless the claim also meets the standards for defamation.'" (citation omitted)).

Under Maryland law, a plaintiff must prove four elements to establish a claim for defamation: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4)

that the plaintiff thereby suffered harm." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 268 (D. Md. 2015) (quoting *Piscatelli*, 424 Md. at 306). "Every alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339 (D. Md. 2011) (citation omitted), *aff'd*, 519 F. App'x 199 (4th Cir. 2013). Regarding the first element, Plaintiffs present three sets of statements that Defendant allegedly made: the statements on the Defamatory Website, a defamatory statement made on Facebook, and a variety of ancillary defamatory statements made through Facebook, email, and printed sources. ECF No. 141 at 2. The Court addresses each in turn.

### 1. Plaintiffs have failed to demonstrate that Defendant published the Defamatory Website.

Defendant contends that Plaintiffs cannot establish that he defamed them through the Defamatory Website because they cannot prove the first element of defamation—that he published the statements made therein. ECF No. 143-1 at 8. For their part, Plaintiffs appear to imply, without any explicit argument or citation to any exhibits, that they have presented facts demonstrating that Defendant published the statements.[4] ECF No. 141 at 2–3. Specifically, Plaintiffs present two sets of evidence, each of which fail to support a genuine dispute that Defendant published the statements in the Defamatory Website.

---

[4] The Court notes that Plaintiffs have shirked their responsibilities as litigants in general and on summary judgment in particular. Although Plaintiffs are unrepresented, this Court is not required to "become an advocate for the unrepresented part[ies]." *Jefferies*, 392 F. Supp. 3d at 625. Moreover, on summary judgment, Plaintiffs *must* "cite[] to particular parts of … the record" to support their claims. Fed. R. Civ. P. 56(c)(1)(A). Here, Plaintiffs have presented conclusory statements, rather than argument, to support their defamation and false light claims, *see* ECF No. 2–3, and they have failed to cite to any exhibits in the record within their briefs, *see generally* ECF No. 141. Nevertheless, to ensure Plaintiffs' arguments are adequately addressed, the Court "liberally construe[s]" them in the forms presented above. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

Plaintiffs present printouts of websites that purportedly show that Defendant is the co-founder of Sailfish, the website hosting service that hosts the Defamatory Website on its servers. *See* ECF Nos. 141-5 to -8. Thus, Plaintiffs appear to argue that because Defendant co-founded the service that is hosting the Defamatory Website, he therefore wrote the defamatory statements on that website. This argument fails for two reasons. *First*, because these printouts cannot be considered on summary judgment, they cannot—and do not—create a genuine dispute that Defendant published the Defamatory Website. *See supra* Section I.A.1.i. *Second*, even if the Court could consider the printouts, Plaintiffs' argument relies on exactly the type of "building of one inference upon another" that is prohibited on summary judgment. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Indeed, courts have rejected the argument that a factfinder could infer that a party published information on a website merely because they hosted the website. *See Jenkins v. NTE Aviation Ltd.*, No. 4:09-CV-117-A, 2010 WL 609365, at *3 n.3 (N.D. Tex. Feb. 19, 2010) ("[P]laintiff has offered no evidence that defendants created or approved anything he claims is on their website, an important point since any number of individuals … could potentially alter the postings on a website."); Mosteller et al., *supra*, at § 227 ("[C]ourts have expressed skepticism about attributing documents obtained from a website to the organization or individual who maintains the site."). Absent any admissible evidence that Defendant interacted with the Defamatory Website, Plaintiffs' printouts do not create a genuine dispute that Defendant published the defamatory statements on it.

Next, Plaintiffs present the declaration of Alissa Hindle, Defendant's former spouse. Ms. Hindle attests to, in part, the following:

- [Defendant] created and distributed false narratives about individuals involved in the federal civil case [involving Plaintiffs].

- Karl also hijacked my email account and sent messages pretending to be me. He used this control to further his own legal narratives and impersonated my voice in support of his fabricated stories.

ECF No. 120-1.[5] Thus, Ms. Hindle's declaration states that Defendant made "false narratives" about Plaintiffs and that Defendant "sent messages" using her email account. This declaration does not create a genuine dispute that Defendant published the Defamatory Website for two reasons.

*First*, Ms. Hindle's affidavit is too vague. A vague affidavit cannot create a genuine issue of material fact. *See, e.g.*, *Gavin v. Spring Ridge Conservancy, Inc.*, 934 F. Supp. 685 (D. Md. 1995) (finding affidavit by plaintiff stating that defendants have intimidated him "by making comments and other statements" was insufficient to support evidence of intentional discrimination), *aff'd*, 92 F.3d 1178 (4th Cir. 1996); *Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 810-11 (8th Cir. 2007) (Holding affidavit, stating merely that alleged defamer said "something about [plaintiff] endangering patients," "was too vague to support an inference that [defamer] had accused [plaintiff] of endangering patient safety"); *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (holding facts on summary judgment, including affidavits, "must be particularized, not vague or conclusory"). Ms. Hindle's declaration states that Defendant "distributed false narratives" about Plaintiffs, but it does not explain what narratives she is referring to; the declaration states that Defendant "sent messages" impersonating Ms. Hindle, but it neither specifies the messages that Defendant allegedly sent nor the content of those messages and how they relate to Plaintiffs' claims. Because the statements in the

---

[5] The Court considers the declaration of Alissa Hindle that was introduced earlier in the litigation at ECF No. 120-1 because the Court cannot effectively evaluate the off-center, cropped printouts of the declaration that were attached to the motion for summary judgment at ECF Nos. 141-11, -12. *See* Fed. R. Civ. P. 56(c)(3) (permitting court to consider "other materials in the record" on summary judgment).

declaration lack the specificity necessary to understand how they support Plaintiffs' claims, they are insufficient to create a genuine dispute of material fact.

*Second*, while Ms. Hindle attests to Defendant impersonating her email account, she does not mention the Defamatory Website at all or state that Defendant made statements on the Defamatory Website in her name. As a result, Ms. Hindle's declaration warrants the negative inference that Defendant did not publish the Defamatory Website, and any contrary inference "is unduly speculative" for purposes of summary judgment. *Dash*, 731 F.3d at 327.

For these reasons, Ms. Hindle's declaration does not create a genuine dispute that Defendant published the statements made in the Defamatory Website. Because neither the website printouts nor Ms. Hindle's affidavit create a genuine dispute of material fact, Plaintiffs have not met their burden to establish that Defendant published the Defamatory Website as a matter of law.

> **2.      Plaintiffs have failed to demonstrate that Defendant published the Facebook statement.**

Plaintiffs allege in their Complaint and their motion for summary judgment that Defendant published the following statement on Facebook:

> Earl Morrissey, good friend of hidden camera perv Dov Goldstein. Since Alissa [Hindle] made her public statement on the hidden camera sex recordings, this guy has blown my phone up and I suspect is one of two individuals behind the anonymous texts that have been sent. For someone who claims to have no involvement, he's sure acting like a frightened little puppy next to a pile of fresh poop.

ECF No. 5 at 7; *see* ECF No. 141 at 1. Thus, Plaintiffs allege that Defendant posted that Plaintiffs Earl Morrissey and Dov Goldstein did, in fact, secretly record intimate encounters between Mr. Goldstein and Ms. Hindle.

Plaintiffs fail to establish a genuine dispute that Defendant made this statement under the first element of defamation. A plaintiff cannot rely upon mere allegations in the pleadings to

support or defeat a motion for summary judgment. *See Gregory v. Moore*, No. 1:24-CV-210-GCM, 2025 WL 2831010, at *1 (W.D.N.C. Oct. 6, 2025) (citing *Celotex*, 477 U.S. at 324). The plaintiff must cite to admissible evidence to support or oppose a fact, and "[t]he court need consider only the cited materials." Fed. R. Civ. P. 56(c)(1), (3).[6]

Here, Plaintiffs' Complaint alleges the details of the post made on Facebook, but those allegations cannot create a disputed fact on summary judgment. Additionally, there is no evidence—none—in the materials attached to Plaintiffs' Motion that prove the alleged Facebook statement was made, much less that it can be attributed to Defendant. Plaintiffs have not presented a genuine dispute of material fact that Defendant made the statement in the Facebook post alleged in the Complaint. As a result, this allegation of defamation fails as a matter of law.

### 3. Plaintiffs have failed to demonstrate and plead that Defendant published the ancillary defamatory statements.

Plaintiffs argue on summary judgment that Defendant made four ancillary sets of defamatory statements: (1) that he reposted the statements from the Defamatory Website on Facebook; (2) that he accused Plaintiffs of drugging individuals on Facebook and through emails; (3) that he filed an FBI complaint containing the allegations from the Defamatory Website and the allegation that Plaintiffs drugged individuals; (4) that he threatened to bring about a RICO action against Plaintiffs. ECF No. 141 at 2. As discussed below, these allegations have not been and cannot be substantiated on summary judgment because the facts supporting

---

[6] Indeed, a trial court does not err if it does not address uncited materials in the record that contain facts relevant to summary judgment. *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017); *Arvon v. Liberty Mut. Fire Ins. Co.*, No. 20-1249, 2021 WL 3401258, at *3 (4th Cir. Aug. 4, 2021).

the allegations are not admissible and because these allegations were not pleaded in Plaintiffs'

Complaint.

"[T]he pleadings in a defamation case must … be sufficiently detailed to enable a

defendant to appropriately respond." *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*,

381 F. Supp. 3d 536, 565 (D. Md. 2019) (citation omitted). "[E]very alleged defamatory

statement constitutes a separate instance of defamation, which a plaintiff must specifically

allege." *Id.* (citation modified). Accordingly, "the Fourth Circuit has clearly held that a 'plaintiff

may not baldly allege a broad course of conduct over a lengthy period of time and later sue on

any act that occurred during that time period.'" *Hoai Thanh v. Ngo*, Civi Action No. PJM-14-

448, 2016 WL 3958584, at *4 (D. Md. July 22, 2016) (citation omitted), *aff'd*, 694 F. App'x 200

(4th Cir. 2017).

Once a plaintiff has alleged specific instances of defamation in their complaint, they

cannot later assert additional allegations of defamation on summary judgment because such

conduct amounts to an impermissible constructive amendment of the complaint. *See Living

Lands, LLC v. Cline*, 657 F. Supp. 3d 831, 845 (S.D.W. Va. 2023) ("[A]sserting a new legal

theory for the first time in opposing summary judgment amount[s] to constructive amendment of

the amended complaint and thus unfairly prejudice[s] the defendant." (quoting *Harris v. Reston

Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013))), *aff'd*, No. 23-1641, 2024 WL 1615011

(4th Cir. Apr. 15, 2024); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d

399, 435 (D. Md. 2006) (finding defendant could not constructively amended its unjust

enrichment counterclaim on a motion for summary judgment by adding allegations that it

overpaid plaintiff for escrow payments and source tag labels).

Before addressing whether Plaintiffs' four ancillary defamatory statements were properly pleaded, the Court addresses their admissibility. The evidence supporting statements 1, 2, and 4, which are all printouts of alleged defamatory statements made on Facebook or through email, ECF Nos. 141-9, -10, -16, will not be considered because they have not been authenticated, nor have Plaintiffs explained how they could be admissible at trial. *See supra* Sections I.A.1.ii, I.A.2. The evidence supporting statement 3 also cannot be considered because Plaintiffs fail to authenticate the alleged FBI complaint or explain how it would be admitted at trial. ECF No. 141-14. As a result, Plaintiffs have not established a genuine dispute that Defendant republished the allegations on the Defamatory Website, that he accused Plaintiffs of drugging individuals, that he filed an FBI complaint containing defamatory statements or that he threatened Plaintiffs with a RICO action.

Even if the evidence supporting these statements was admissible, however, none of the four sets of defamatory statements are actionable because they were not specifically pleaded in Plaintiffs' Complaint. ECF No. 5. Instead, Plaintiffs raise these claims for the first time on summary judgment, which amounts to an impermissible constructive amendment of the Complaint. Plaintiffs were required to move to amend the Complaint to bring these allegations, *Sensormatic Sec. Corp.*, 455 F. Supp. 2d at 436, and it is too late at this stage in the case to do so now.

Plaintiffs have failed to establish a genuine dispute that Defendant published the four sets of ancillary defamatory statements because the evidence supporting them is inadmissible and because Plaintiffs failed to plead them. Accordingly, these allegations of defamation fail as a matter of law. Indeed, Plaintiffs have not presented a genuine dispute that Defendant made any of the alleged defamatory statements on summary judgment, either because they failed to supply

19

sufficient evidence or because they failed to plead their allegations in their Complaint. Thus, Plaintiffs cannot prove their defamation claims and, by extension, cannot prove their false light claims based on the same conduct. Defendant is entitled to judgment on Plaintiffs' defamation and false light claims.

## II.    Defendant's Counterclaims Do Not Survive Summary Judgment.

Plaintiffs claim that the Court should grant summary judgment in their favor on Defendant's counterclaims for tortious interference. ECF No. 141 at 5–6.[7] Defendant, on the other hand, argues that there is no material dispute that Goldstein tortiously interfered with his business, Wellspring Digital, by posting defamatory YouTube videos and that each Plaintiff tortiously interfered with Wellspring Digital by creating Facebook pages that posted defamatory statements about him. *See* ECF No. 143-1 at 3–5. The Court first analyzes the admissibility of Defendant's evidence and then turns to the merits of Defendant's claims.

---

[7] Defendant questions whether Plaintiffs' arguments in their Motion against his counterclaims should be reviewed on the standard for a motion to dismiss or the standard for summary judgment. ECF No. 151 at 2–3. Additionally, Defendant asserts that, to the extent that the Court reviews Plaintiffs' arguments on a motion to dismiss standard, they are barred by res judicata (claim preclusion). The Court reviews Plaintiffs' arguments under the standard for summary judgment and thus need not address Defendant's claim-preclusion argument. *First*, construing Plaintiffs' pro se filing liberally, *Jefferies*, 392 F. Supp. at 625, Plaintiffs' arguments show that, in practice, they are moving for summary judgment against Defendant's counterclaims. Plaintiffs argue that Defendant's counterclaims are, for example, "factually baseless," and "unsupported by admissible evidence," ECF No. 141 at 4, and these arguments are only colorable if they are presented on summary judgment, in which a nonmovant's factual allegations must be supported by evidence, rather than on a motion to dismiss, in which a nonmovant's factual allegations are assumed to be true. *Second*, a court must treat a motion to dismiss as one for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," Fed. R. Civ. P. 56(d), and because Plaintiffs present exhibits that the Court does not exclude here, *see* ECF Nos. 120-1, 141-11, -12 (Alissa Hindle affidavit), the Court must treat Plaintiffs' arguments against Defendant's counterclaims as arguments on summary judgment.

A.    **Defendant's evidence is inadmissible.**

Plaintiffs argue that Defendant's evidence is inadmissible on summary judgment. ECF No. 149 at 1–2; Fed. R. Civ. P. 56(c)(3). The Court agrees. As discussed previously, a court may consider evidence on summary judgment if the proponent either (1) "show[s] that the material is admissible as presented" or (2) "explain[s] the admissible form that is anticipated." *Dipnarine*, 2025 WL 896333, at *6. Defendant has not fulfilled either of these two options.

1.    **Defendant has failed to present his evidence in admissible form.**

Defendant's evidence was not presented in an admissible form. Defendant presents three categories of online evidence: website printouts, videos, and a direct message on Facebook. The Court addresses each category below.

i.    **Website Printouts**

Defendant presents a variety of online printouts, each of which is inadmissible because he has failed to authenticate them. *See* Fed. R. Evid. 901(a) (defining authentication). As discussed above, authentication of website printouts is often a two-step process. First, a proponent generally authenticates printouts of websites as accurately depicting those websites through a mix of distinctive characteristics and depositions, affidavits, or other testimony based on personal knowledge. *See supra* Section I.A.1.i. Second, to authenticate authorship of a post on a website, the proponent must typically present certifications from the owner of the website and testimony based on personal knowledge. *See supra* Section I.A.1.i. Additionally, to authenticate a printout from a website that retrieves data from other websites, a witness must testify to how the retrieval process works and to the reliability of the retrieval process. *See supra* Section I.A.1.i; *Bondars*, 2018 WL 9755074, at *2.

To support his claim that Plaintiffs tortiously interfered with his business by creating Facebook pages that defamed him, Defendant presents a chain of website printouts purporting to show that Plaintiffs are the authors of one of the allegedly defamatory Facebook pages. ECF No. 143-1 at 3. These printouts include:

- A printout allegedly showing that Plaintiff Ronald Layman's email was used to register the domain of the website "Comedy on the Creek" (the "Domain Printout"). ECF No. 143-12.

- A printout of the Wayback Machine website allegedly showing that the "Comedy on the Creek" website, in November 2016, had a link to its Facebook page (the "Wayback Machine Printout"). ECF No. 143-13.

- A printout allegedly showing that the Comedy on the Creek Facebook page is now the "Fairfield Daily Wire," one of the Facebook pages that has allegedly defamed Defendant. ECF No. 143-14.

These printouts have not been authenticated for several reasons. *First,* Defendant has not presented any depositions, affidavits, declarations, or other evidence testifying to how these printouts were made, to the content of the printouts, or to who authored them. *Second*, as to the Domain Printout and the Wayback Machine Printout, Defendant has not presented evidence as to how the websites depicted in these printouts gather data or to the reliability of their retrieval processes. For these reasons, Defendant has failed to authenticate the printouts.

### ii.    Videos

Defendant also presents printouts of still images of YouTube and Facebook videos allegedly showing Goldstein defaming Defendant. ECF No. 143-11, -18, -20. A proponent attempting to introduce video evidence must also authenticate the video. Fed. R. Evid. 901(a). A plaintiff generally must authenticate video evidence with testimony, depositions, affidavits, or similar evidence describing how the video was made or acquired and the content of the video. *See, e.g.*, *United States v. Smith*, No. 23-4242, 2025 WL 227717, at 4 (4th Cir. Jan. 17, 2025)

(holding government authenticated Snapchat video by testimony describing when video was recorded and received and describing images in video that matched description of defendant and weapon); *Marvel Tech. (China), Co. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 23-CV-24366, 2025 WL 2644734, at *13 (S.D. Fla. Sept. 15, 2025) (finding defendants failed to authenticate YouTube videos on summary judgment because defendants failed to provide certificate from YouTube custodian and failed to provide testimony authenticating content of videos); *cf. Puget Soundkeeper All. v. Louis Dreyfus Commodities LLC*, 192 F. Supp. 3d 1165, 1175 n.10 (W.D. Wash. 2016) (finding photographs authenticated through declaration of witness that had personal knowledge of how the photographs were taken).

Here, Defendant has failed to authenticate the video evidence. Defendant has not introduced any certificate from a YouTube or Facebook custodian that the videos were posted to either website, nor has Defendant presented any testimony or evidence authenticating the content of the videos. Accordingly, Defendant's video evidence is inadmissible.

### iii.    Facebook Comments

Finally, Defendant presents a printout purportedly showing a series of Facebook comments, made by user Oluwarotimi Kolade, in which he states that one of the allegedly defamatory Facebook pages liked his profile "so I could check out their [page] and view their posts concerning [Defendant] when I applied on the public job posting [Defendant] posted." ECF No. 143-23. This printout, and the statements within it, are inadmissible for two reasons.

*First*, Defendant has not authenticated the printout as accurately portraying the Facebook comment section it represents, nor has Defendant authenticated that Mr. Kolade is the author of the comment in question. *See supra* Section I.A.1.i. Lacking authentication, the printout is inadmissible.

*Second*, even if the printout had been authenticated, Mr. Kolade's statements are inadmissible because they are hearsay. Hearsay is an out of court statement offered for the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay evidence is inadmissible unless it meets an exception or exclusion. *See id.* at 802. Mr. Kolade's statements were made out of court and Defendant offers his statements for their truth—that the allegedly defamatory Facebook page did, in fact, like Mr. Kolade's profile when he applied for Defendant's job so that he would view the allegedly defamatory statements on the page. Thus, the statements are hearsay, and Defendant has failed to explain how the statements satisfy a hearsay exception or exclusion. Therefore, Mr. Kolade's statements are inadmissible.

The printout of the Facebook comments involving Mr. Kolade are inadmissible because they have not been authenticated and because they are hearsay.

In sum, the website printouts, videos, and Facebook comments discussed above are not presented in an admissible form.

### 2.    Defendant did not sufficiently explain how his evidence could be admitted at trial.

Defendant claims that, even if his evidence is not presented here in an admissible form, he can present his evidence in an admissible form at trial. ECF No. 151 at 5–6. As discussed previously, for a court to consider evidence on summary judgment, the proponent has the burden to provide a showing that it would be possible to admit the evidence at trial. *Johnson*, 2021 WL 4750182, at *3. Because courts have found online evidence untrustworthy, the proponent must present a stronger showing that online evidence can be admitted at trial. *See supra* Section I.A.2.

Defendant alleges that the online evidence "can readily be presented in admissible form at trial through testimony or proper authentication." ECF No. 151 at 6. In particular, Defendant alleges that his "expert witness[es]" can authenticate and admit the online evidence at trial by

explaining "the digital trail leading to one or more Facebook [a]ccounts published at the hands of [Plaintiffs]." ECF No. 151 at 5. However, Defendant has identified only one alleged expert on summary judgment, Eric Beasley, ECF No. 141-3 at 5, and Defendant has not adequately explained how his testimony would authenticate the online evidence at trial for two reasons.

*First*, although Defendant alleges that Mr. Beasley is an expert in "forensic computer analysis," he does not substantiate this claim. ECF no. 141-3 at 5. Under the Federal Rules of Civil Procedure, a party presenting expert testimony must disclose information involving the basis of the expert's testimony to the opposing party, Fed. R. Civ. P. 26(a)(2), and if a party fails to provide the expert disclosures, they are "not allowed to use that information or witness to supply evidence on a motion … or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, alarmingly, Plaintiffs state that Defendant never submitted such expert disclosures. ECF No. 141 at 5. Defendant has failed to rebut this allegation by either presenting the disclosures and explaining that he did disclose the required information at the required time, or by explaining why his failure to do so was substantially justified or harmless. Accordingly, the Court cannot consider Mr. Beasley's expert testimony on these motions or at trial, and Defendant therefore cannot explain how the online evidence could be admitted.

*Second*, even if Mr. Beasley could testify at trial, Defendant has failed to provide a non-conclusory explanation for *how* he could admit the online evidence. For example, Defendant has failed to explain (1) the basis for Mr. Beasley's ability to explain how the websites in the Domain Printout and Wayback Machine Printout gather data or the reliability of their processes; (2) how Mr. Beasley could authenticate the YouTube and Facebook videos without a certificate from each company showing that the videos were, in fact, posted, or how Mr. Beasley could testify to the

authenticity of the content of the videos; (3) how Mr. Beasley (or any witness, for that matter) could admit the Facebook comments described above to overcome the prohibition against hearsay evidence, Fed. R. Evid. 802. Defendant fails to offer non-conclusory, particularized explanations as to how he could admit the online evidence at trial, and "[t]hat alone is fatal to [his] efforts" to present this evidence on summary judgment. *Johnson*, 2021 WL 4750182, at *3.

Ultimately, Defendant's "position appears to be that the court should have found that it could put [the online evidence] into admissible form because it is easy to imagine how it could," but Rule 56(c)(2) commands that Defendant must actually explain how he intends to admit the evidence. *Id.* Defendant has failed to do so because he did not explain how Mr. Beasley could be admitted as an expert at trial, and he did not explain, with specificity, how Mr. Beasley could admit the evidence had he been able to testify at trial.

Defendant neither presented his online evidence in admissible form nor explained how he could admit the evidence at trial. As a result, the Court does not consider this evidence when evaluating the merits of Defendant's claims on summary judgment.[8]

---

[8] Defendant has presented one item of evidence that the Court can partially consider, but it does not substantiate his claims on summary judgment. Defendant presents a document purporting to show two sets of data. The first set is Wellspring Digital's actual profits and losses over the past several years. ECF No. 143-5 at 4. Defendant states that the profit and loss data is based on "tax and financial records of myself and Wellspring [Digital]" and are based on personal knowledge. ECF No. 151-1 at 6. The Court is satisfied that, with this explanation, Defendant can present the profit and loss data in admissible form at trial such that it can be considered here. The second set of data predicts the profits and losses it will earn over the next several years and the profits and losses it would have earned had Plaintiffs not uttered the allegedly defamatory statements. ECF No. 143-5 at 4. Defendant appears to claim that these predictions can be substantiated through "expert conclusions," ECF No. 151-1 at 6, but Defendant has not identified any financial expert on summary judgment that could offer such conclusions. Additionally, even if Defendant could offer expert testimony at trial to substantiate the profit and loss predictions, the predictions could not prove his case. As discussed later, a party cannot establish causation in a tortious interference claim by merely showing that business losses occurred near the time the alleged tortious interference occurred. *See infra* Section II.B.2. Thus, Defendant's profit and loss document, though partially admissible, does not prevent the Court from entering judgment against his claims.

**B.**   **There is no genuine dispute of material fact as to Defendant's tortious interference claims, and Plaintiffs are entitled to judgment as a matter of law.**

Defendant argues he is entitled to summary judgment on his tortious interference claims. ECF No. 143-1 at 9–10. A party is liable for tortious interference "if he interferes with and damages another in his business or occupation." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 298 (1994). A claim for tortious interference comes in two forms: tortious interference with contract and tortious interference with business relationships. *Id.* at 297. Defendant claims that Plaintiffs are liable under the latter form,[9] so the Court focuses its analysis on that cause of action. A litigant asserting that a party tortiously interfered with their business relationships must show that "the wrongful conduct … interfere[d] with the [litigant's] existing or anticipated economic relationships." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 504 (1995). The litigant must prove four elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 242 (2005) (citation omitted).

Plaintiffs contend that the Court cannot grant summary judgment in Defendant's favor on these claims because Defendant has not established a genuine dispute that Plaintiffs have acted with unlawful purpose to damage Defendant's business (elements 1, 2, and 3), or that Plaintiffs

---

[9] This second form of tortious interference goes by many names in Maryland. Courts have called it tortious interference with "business relationships," with "economic relations," or with "prospective advantage." *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 623 (2003) (business relationships); *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 521 n.3 (D. Md. 2023) (economic relations and prospective advantage). The Court will refer to this claim as tortious interference with business relationships.

have caused damage to Defendant's business (element 4). *See* ECF No. 149 at 2–3. The Court addresses each argument below.

> ### 1. Defendant has failed to demonstrate that Plaintiffs acted with unlawful purpose to damage Defendant's business.

The Court finds that, under the first, second, and third elements of tortious interference, Defendant has failed to establish a genuine dispute of material fact that Plaintiffs engaged in intentional and willful acts against Defendant's business through unlawful purposes. To establish these elements, a litigant must prove that the interfering party deliberately intended to harm the litigant's business relationships through "improper means," such as through "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Spengler*, 163 Md. App. at 242–43 (citation omitted). Defendant presents the following allegations to support that Plaintiffs acted intentionally, through improper means, to harm Wellspring Digital: (1) that Mr. Goldstein produced and uploaded defamatory YouTube videos discussing the accusation that he secretly recorded intimate encounters with Alissa Hindle, and (2) that all three Plaintiffs created and used a number of Facebook pages[10] to defame Defendant and damage his business. *See Generally* ECF Nos. 40-1 at ¶¶ 82–221, 143-1 at 3–6.

Defendant fails to produce a genuine dispute as to these allegations. This is because, even if Defendant's exhibits could establish that Plaintiffs posted the allegedly defamatory online material—which the Court is skeptical they could—none of the exhibits can be considered. Defendant has not authenticated the exhibits, nor has he explained how the exhibits could be authenticated at trial. *See supra* Section II.A. Thus, the Court does not consider these exhibits.

---

[10] These pages include Wellspring Digital Download, Frederick Daily Wire, Frederick Media Group, Middletown Daily Wire, Middletown Media Group, Fairfield Media Group, and Fairfield Daily Wire. ECF No. 40-1 at 13.

*See AMA Sys.*, 2024 WL 4122113, at *4 (refusing to consider many of Plaintiffs' and Defendants' nearly 100 exhibits because they were not authenticated). As a result, Defendant fails to establish that a genuine dispute exists as to the first, second, and third elements of intentional interference with business relationships—that Plaintiffs intended to damage Defendant and his business by posting defamatory online material.

### 2.    Defendant has failed to demonstrate that Wellspring Digital suffered damages.

Defendant contends that he can prove the fourth element of his tortious interference claim: that Plaintiffs' allegedly defamatory conduct damaged Wellspring Digital. *See* ECF No. 143-1 at 6. In particular, Defendant claims that the allegedly defamatory Facebook pages, authored by Plaintiffs, "liked" the pages of a number of Wellspring Digital's existing and prospective clients. ECF No. 143-1 at 6. Subsequently, Defendant asserts, the clients saw the defamatory posts made about Defendant and terminated their contracts with Wellspring Digital. *See* ECF No. 143-1 at 6. Despite Defendant's assertions, he has failed to demonstrate that Wellspring Digital suffered damages.

To establish damages on a tortious interference with business relationships claim, a litigant must prove (1) that the litigant has "existing or anticipated [business] relationships" and (2) that "the [opposing party's] wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference." *Bagwell*, 106 Md. App. at 504; *US Wind Inc. v. InterMoor, Inc.*, Civil Action No. SAG-19-2984, 2024 WL 1050823, at *4 (D. Md. Mar. 11, 2024) (quoting *Med. Mut. Liab. Soc. of Maryland v. B. Dixon Evander & Assocs., Inc.*, 339 Md. 41, 54 (1995)). The Court turns to each element below.

*First*, Defendant has failed to establish that he has "existing or anticipated business relationships" that were the subject of tortious interference. A litigant must demonstrate a

"reasonable probability … that a contract will arise from" the litigants' negotiations with a third party to prove that they have existing or anticipated business relationships. *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 542 (D. Md. 2006) (citation modified). In fact, "every state which has addressed the issue has found that the party *must* establish some evidence that a prospective business relationship is likely to occur." *Id.*; *see, e.g.*, *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 228 (4th Cir. 2004) (determining, under Virginia law, that "mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action"); *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118 (Ind. Ct. App. 1992) (granting summary judgment on tortious interference claim because plaintiffs failed to present evidence "that any viable business relationships existed between themselves and the third parties, and have not presented affidavits or other additional testimony from these third parties demonstrating such relationships").

Here, Defendant has alleged that existing client contracts with six named businesses, as well as a prospective client contract with one named business, were terminated because of Plaintiffs' allegedly defamatory conduct. ECF No. 143-1 at 6. However, Defendant has presented no evidence—none—that a business relationship existed between Wellspring Digital and these seven businesses. Defendant has not introduced any of the existing or prospective contracts that were allegedly terminated, nor has he introduced any affidavits or testimony from representatives of these businesses demonstrating that they, in fact, had a business relationship with Wellspring Digital. Absent this evidence, Defendant has failed to demonstrate an existing or anticipated business relationship with which Plaintiffs could have tortiously interfered.

*Second*, even if Defendant had presented evidence of existing or anticipated business relationships, he has failed to show that Plaintiffs' allegedly defamatory acts damaged those

relationships. A litigant may prove causation in a tortious interference action through direct or circumstantial evidence that "amount[s] to a reasonable likelihood or probability rather than a possibility" that the conduct caused the injury. *Lyon v. Campbell*, 120 Md. App. 412, 437 (1998) (citation omitted). On the other hand, "causation evidence that is wholly speculative is not sufficient." *Id.* In particular, mere correlation between the publication of alleged defamatory statements and a loss in business is insufficient to establish causation. *See Med. Mut.*, 339 Md. at 56 (holding that evidence that insureds ended business with Plaintiffs after allegedly defamatory letter was sent to insureds was insufficient, without more, to establish causation). Here, Defendant's only argument that Plaintiffs' allegedly defamatory conduct caused clients to terminate contracts with Wellspring Digital was that Wellspring Digital's profits declined at the same time the conduct occurred. *See* ECF No. 143-1 at 6; ECF No. 143-5 (damages estimate). This is exactly the type of "wholly speculative" correlation argument that cannot establish a "reasonable likelihood" of causation. *Lyon*, 120 Md. App. at 437. Besides this argument, Defendant has failed to present any affidavits or other testimony from existing or prospective clients that could have explained why they terminated the alleged contracts they had or were negotiating with Wellspring Digital. Accordingly, Defendant fails to establish a genuine dispute that Plaintiffs' allegedly defamatory conduct caused damage to Wellspring Digital's business relationships.

Because Defendant has failed to present evidence of Wellspring Digital's existing or prospective business relationships and has failed to substantiate how Plaintiffs' alleged conduct caused damage to those relationships, he has not created a genuine dispute of material fact regarding the fourth element of his tortious interference with business relationships claim.

Defendant has failed to establish a genuine dispute that Plaintiffs posted the allegedly defamatory Facebook and YouTube material and, as a result, he cannot prove the first, second, and third elements of tortious interference with business relationships. Defendant has also failed to establish, under the fourth element, a genuine dispute that Plaintiffs' alleged conduct damaged Wellspring Digital's business relationships. As a result, Defendant cannot prove his tortious interference claims against each of the Plaintiffs. Plaintiffs are entitled to judgment on Defendant's tortious interference claims.

### CONCLUSION

Plaintiffs' Motion for Summary Judgment and Motion to Dismiss Defendant's Counterclaims with Prejudice is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Judgment for each party's claims is entered in favor of the opposing party. As a result, each party's claims fail.

A separate order consistent with this Opinion follows.[11]

Date: January 8, 2026

_____/s/_____
Chelsea J. Crawford
United States Magistrate Judge

---

[11] In addition to the two motions discussed above, Plaintiffs have also filed a Motion to Set Pretrial Date. ECF No. 152. Because this Opinion disposes of all claims in the case, the Motion to Set Pretrial Date is DENIED AS MOOT. This ruling will be included in the order accompanying this Opinion.